**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 25-cr-193 (CJN)** |
| | : | |
| **JAMERA WOOD,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in support of its request and recommendation that the Court sentence the defendant Jamera Wood to the low-end of the United States Sentencing Guidelines - 30 months' imprisonment, followed by three years of supervised release, and a $100 Special Assessment.

### FACTUAL BACKGROUND

Beginning in 2024, members of the Metropolitan Police Department ("MPD"), Federal Bureau of Investigations ("FBI"), and partner law enforcement agencies, including the Drug Enforcement Administration ("DEA") and Homeland Security Investigations ("HSI"), were investigating narcotics sales, firearms sales, firearms trafficking, and crimes of violence involving firearms that occur in and around the area of the 5100 block of Sheriff Road, Northeast, Washington, D.C.  During the course of the investigation, law enforcement identified several individuals who were selling illegal substances, including Phencyclidine (PCP).  One of those individuals was the defendant, who was observed numerous times by undercover controlled buys, surveillance, and a pole camera, conducting PCP sales to drug customers.  The defendant also made a series of controlled drug sales to an undercover police officer (UC).   Dating back to

November of 2024, the defendant was observed by law enforcement assisting with drug transactions.

**April 24, 2025**

On April 24, 2025, a UC contacted the defendant on her cellular telephone when the UC was outside of 5128 Sheriff Road NE, Washington, D.C. (The UC was previously provided the defendant's cellular telephone number). The defendant approached the UC's vehicle and told the UC "I got it in a bottle already" (a reference to PCP), and asked to get into the UC's vehicle. The UC told the defendant to get in his vehicle, *see* Exhibit 1, below.

**Exhibit 1**
**The defendant approaching the UC vehicle**



The defendant provided the UC a vial containing an amber colored liquid in exchange for $560 of prerecorded funds, *see* Exhibit 2, below.

**Exhibit 2**
**The defendant providing the UC 82.6 grams of PCP**



The substance was submitted to the DEA Laboratory for testing.  The vial containing the amber

colored liquid weighed 82.6 grams and tested positive for PCP, *see* Exhibit 3, below.

**Exhibit 3**
**April 24, 2025 lab results**



<u>**May 1, 2025**</u>

On May 1, 2025, the UC contacted the defendant on her cellular telephone when the UC was outside of 5128 Sheriff Road NE, Washington, D.C.  The UC observed the defendant exit 5128 Sheriff Road NE, Washington, D.C.  The defendant walked up to UC's vehicle and entered, *see* Exhibit 4, below.

**Exhibit 4**
**The defendant approaching the UC vehicle**



Once inside the vehicle, the defendant exchanged the four ounces of PCP, and 1.3 grams of cocaine

for $610 of pre-recorded funds, *see* Exhibit 5, below.

**Exhibit 5**
**The defendant provided the UC 79.6 grams of PCP and .96 grams of cocaine base**



The substances were submitted to the DEA Laboratory for testing. The vial containing the amber colored liquid weighed 79.7 grams and tested positive for PCP. The white substance weighed .96 grams and tested positive for cocaine base, *see* Exhibit 6, below.

**Exhibit 6**
**May 1, 2025 lab results**



**May 6, 2025**

On May 6, 2025, the UC called the defendant on her cellular telephone and asked if she had ever had a conversation with her supplier about what the price would be "for the six"(a reference to six ounces of Phencyclidine). The defendant replied, "Umm, let me see. Let me, let me call him back. I'm about to call him now and call you". The defendant called the UC back and said that the price for six ounces of PCP was $800. Later that day, the UC arrived at 5128 Sheriff Road NE, Washington, D.C., and exchanged $800 of prerecorded funds with the defendant for six ounces of an amber colored liquid, *see* Exhibit 7 and 8, below.

**Exhibit 7**
**The defendant approaching the UC vehicle**



**Exhibit 8**
**The defendant provided the UC 79.6 grams of PCP**



The substance was submitted to the DEA Laboratory for testing. The vial containing the amber colored liquid weighed 118.96 grams and tested positive for PCP, *see* Exhibit 9, below.

**Exhibit 9**

**May 6, 2025 lab results**



On July 10, 2025, the defendant was arrested inside an apartment at 5128 Sheriff Road, Northeast, Apartment 202, Washington, D.C.  Recovered from inside the apartment was $2,767 of U.S. currency and 60 individually packaged baggies of suspected cocaine base weighing 38 grams, among other things, *see* Exhibit 10, below.  On the day the defendant was arrested, she admitted that the cocaine base belonged to her.

**Exhibit 10**
**Some of the drugs recovered**



## SENTENCING RECOMMENDATION

### A.    Sentencing Guidelines

The United States Probation Office calculated the defendant's United States Sentencing Guidelines (U.S.S.G.) range and sentencing recommendation in this case.    The Pre-Sentence Report (PSR) writer, Ms. Candace Broughton, calculated the defendant's total offense level to be 21.    *See* PSR ¶¶ 39, 83.    Ms. Broughton calculated the defendant's criminal history score as Category I because the defendant has no prior convictions.    *See* PSR ¶ 42.    Ms. Broughton calculated the defendant's Guidelines range as 37–46 months of imprisonment.    *See* PSR ¶ 83.

9

At the time Ms. Broughton calculated the Guidelines they were correct, however since that time, the defendant has qualified for an additional 2-point reduction pursuant to U.S.S.G §5C1.2. Therefore, with an additional 2-point reduction, the defendant's total offense level should be 19, with a Guidelines range of 30-37 months imprisonment.  Based on the below, the government believes a sentence of 30 months imprisonment followed by three years of Supervised Release is a fair and just sentence in this matter.  The government will provide the Court additional details at the sentencing hearing.

### B.    Nature and Circumstances of the Offense

The defendant was part of a larger open-air drug trafficking organization.  Her role may have been on the lower spectrum compared to other drug traffickers in the Sheriff Road, NE, neighborhood drug traffickers.  However, the defendant had ready access to large quantities of PCP and cocaine base, including six ounces of PCP in one UC sale.  To put that quantity in perspective, a user usually dips a cigarette into the liquid PCP and then smokes the cigarette with the PCP on it.  An ounce of PCP contains roughly 100 to 300 "dippers" based on how generous the PCP dealer is with the illegal substance.  Therefore, six ounces of PCP roughly contains between 600 to 1,800 single use quantities, *see* Exhibit 11, below.

**Exhibit 11**

**Example of PCP on a cigarette**



Additionally, PCP is an addictive drug; its use often results in psychological dependence, craving, and compulsive behavior.  PCP produces unpleasant psychological effects, and users often

become violent or suicidal.   PCP poses particular risks for young people.  Even moderate use of the drug can negatively affect the hormones associated with normal growth and development.  PCP use also can impede the learning process in teenagers.  High doses of PCP can cause seizures, coma, and even death (often as a consequence of accidental injury or suicide while under the drug's effects).  At high doses, PCP's effects may resemble the symptoms associated with schizophrenia, including delusions and paranoia.  Long-term use of PCP can lead to memory loss, difficulty with speech or thought, depression, and weight loss.  These problems can persist for up to a year after an individual has stopped using PCP.

Not only is PCP dangerous and addictive to the user, causing long-term physical and mental health issues to the user, but the illegal substance also affects the user/addicts family who suffer the results of their loved one's addiction.  This includes the financial and emotional burden placed on family members who also have to live through addiction.  Lastly, is the harm to the community PCP causes in the form of government resources allocated to treat the PCP user/addict, utilizing scarce government funds, as well as the strain on the criminal justice system in the form of imprisonment for the user/addict.  There is also harm resulting to victims who are exposed to criminal conduct at the hands of the user/addict.  In sum, PCP is one of the most dangerous illegal substances being sold by drug traffickers without any consideration to the harm to fellow citizens, all motivated by greed and the decision to chase easy money and avoid lawful work.  The nature and circumstances of the offense warrant the sentence requested by the government.

C.    **Defendant's History and Characteristics**

The defendant is 26 years old, *see* PSR at P.2, and has never been arrested as a juvenile or adult, *See* PSR ¶ 40-41.  In 2017, she obtained a high school degree, in 2018, entered an emergency medical technician program but quit because it "was too hard" and due to drug use.  The

government does recognize that the defendant had a difficult childhood and upbringing, *See* PSR ¶ 48-51.  However, one aspect of her upbringing should have been a clear reminder to her of the dangers of drug use, and the harm a drug dealer is causing to families in the community.  The defendant acknowledged that her father  "abandoned the family due to his drug addiction to PCP," *See* PSR ¶ 51.  The defendant either ignored or became comfortable with selling deadly poison for profit, and turned a blind eye to the irreversible effects it causes to the user/addict, family members, and the community.

On the positive side, the defendant agreed to accept responsibility and plead guilty fairly quickly.  Two months after the defendant was indicted she pled guilty, *See* PSR ¶ 1, 4.  Of additional note, defense counsel had reached out to the undersigned within a few weeks and said the defendant wanted to plead guilty.  What makes this more significant is there was a substantial amount of discovery, but in short order the defendant was prepared to accept responsibility.  Furthermore, the defendant has taken additional steps to atone for illegal conduct which the government can detail at the sentencing hearing.    .

### D. <u>Danger to the Community</u>

The defendant appears to have taken remedial steps to correct her criminal conduct.  The USPO writer has recommended the low-end of the Guidelines (37 months without the knowledge that the defendant qualifies for the additional -2 point reduction).  The government would point out that the low-end of the Guidelines is the appropriate sentence.  The defendant received benefit in the Guidelines for no criminal history in the form of Criminal History category I, Zero-Point Offender (-2 points) U.S.S.G. 4C1.1(a) and (b), and Safety Valve Offender (-2 points), U.S.S.G §5C1.2.  Lastly. The government permitted the defendant to plead guilty to Count Two, which did not carry the mandatory-minimum five year sentence which pleading or being found guilty to

Count Four would have exposed her to, and for those reasons the government believes the defendant has received a significant benefit by way of the plea, and Guidelines. In short, the government believes that all the leniency that should be afforded to the defendant was encompassed in the plea to a lesser charge, the Guidelines accounting for her lack of criminal history, her accepting responsibility and her conduct. In other words, to argue that she has no prior criminal history and the Court should lower her sentence would be double counting because she was afforded that adjustment and others in the Guidelines calculation. In sum, there is no additional information that warrants a below the Guidelines sentence, at this time.

## **CONCLUSION**

Based on the forgoing, the government requests the Court sentence the defendant to 30 months imprisonment, with three years of Supervised Release, and a $100 Special Assessment.

Respectfully submitted,

Jeanine Piro
United States Attorney

By: _____/s/_____
Anthony Scarpelli
Assistant United States Attorney
D.C. Bar Number 474711
Anthony.Scarpelli@usdoj.gov
(202) 252-7707

Daniel Seidel
Assistant United States Attorney
CO Bar Number 41521
Daniel.Seidel@usdoj.gov

U.S. Attorney's Office for the District of Columbia
601 D Street NW, Washington, D.C. 20530